# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MONICA GREEN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KANSAS CITY JUVENILE COURT, ) <br> ) <br> Defendant. ) <br> ) | CIVIL ACTION <br><br> No. 19-2359-KHV |

## MEMORANDUM AND ORDER

On July 1, 2019, plaintiff filed a pro se complaint against Kansas City Juvenile Court. Complaint (Doc. #1). Plaintiff alleges that defendant committed various intentional torts: defamation of character, libel, slander and intentional infliction of emotional distress. Her allegations apparently relate to proceedings in which a district attorney from Wyandotte County, Kansas filed a motion to terminate plaintiff's parental rights. Plaintiff asserts that the Court has jurisdiction based on diversity of citizenship and federal civil rights violations. However, while plaintiff checks the box on the complaint form, alleging that the Court has subject matter jurisdiction based on an alleged civil rights violation, the complaint form does not mention civil rights. She did not explain which protected right defendant allegedly violated, or explain how defendant violated that right.

On July 10, 2019, U.S. Magistrate Judge Teresa J. James ordered plaintiff to show good cause in writing why the Court should not dismiss this action for (1) lack of subject matter jurisdiction and (2) failure to state a claim upon which relief can be granted. Order To Show Cause (Doc. #9) at 4. Judge James also instructed plaintiff to explain why the Court should not abstain from hearing her claims under Younger v. Harris, 401 U.S. 37 (1971). Id. This matter comes

-1-

before the Court on plaintiff's Response To Order To Show Cause (Doc. #11) filed August 14, 2019. For reasons stated below, the Court finds that plaintiff failed to show good cause why the Court should not dismiss this action.

I.     **Subject Matter Jurisdiction**

In her Response To Order To Show Cause (Doc. #11), plaintiff does not clearly explain why the Court has subject matter jurisdiction in this case. She does not mention diversity of citizenship, and only vaguely refers to a potential claim arising under federal law. Instead, plaintiff makes a conclusory statement, without further explanation, that defendant violated her rights under the Fourth Amendment to the United States Constitution.

Courts may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." Scheideman v. Shawnee Cty. Bd. of Cty. Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R . Civ. P. 12(h)(3). Because federal courts have limited jurisdiction, the law imposes a presumption against jurisdiction. Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999). Therefore, plaintiff bears the burden of showing that jurisdiction is proper and must demonstrate that the case should not be dismissed. Id.; see Jensen v. Johnson Cty. Youth Baseball League, 838 F. Supp. 1437, 1439-40 (D. Kan. 1993). Conclusory allegations of jurisdiction are not enough. Jensen, 838 F. Supp. at 1439-40.

Because plaintiff proceeds pro se, the Court construes her complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, does not assume the role of advocate for the pro se litigant. Id.

Here, plaintiff has not established subject matter jurisdiction. First, she has not shown diversity of citizenship. 28 U.S.C. § 1332. Section 1332 requires complete diversity between all plaintiffs and all defendants. See Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004). Here, the parties are not completely diverse. It is highly doubtful that Kansas City Juvenile Court is an entity which is capable of being sued. But if it is, it is – like plaintiff – a citizen of the State of Kansas. Plaintiff's complaint actually asserts that both she and defendant are Kansas citizens, with defendant located at 711 Armstrong Avenue, Kansas City, Kansas 66101. Complaint (Doc. #1) at 2. Therefore, because the parties are not completely diverse, the Court lacks subject matter jurisdiction under Section 1332.

Second, plaintiff has not established federal question jurisdiction. In her complaint, plaintiff checks the box which states that the Court has jurisdiction "because of violation of the civil or equal rights, privileges, or immunities accorded to citizens of, or persons within the jurisdiction of, the United States (28 U.S.C. § 1343)." Under Section 1343, a federal court has subject matter jurisdiction over civil actions authorized by law:

> (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
>
> (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
>
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
>
> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C. § 1343.

Plaintiff has not sufficiently alleged a violation which falls under Section 1343. Plaintiff's complaint does not mention the violation of any civil or equal right, privilege or immunity under federal law. Rather, aside from challenging the sufficiency of the evidence in her parental rights case, the complaint is based entirely on the intentional state law torts of defamation of character, libel, slander and intentional infliction of emotional distress. After suggesting how the police could have better investigated the matter, plaintiff concluded that she "feel[s] that an Intentional Tort occurred." Specifically, there was a "defamation of [her] character" by "making false and or malicious statement[s] and, slander and libel." Complaint (Doc. #1) at 3. These defamation claims do not involve any civil right arising under federal law.

Further, plaintiff's Response To Order To Show Cause (Doc. #11) does not show that her complaint raises a federal claim. Like her complaint, plaintiff's response to the show cause order focuses almost exclusively on challenging the evidence in her parental rights case. In addition to alleging the existence of an interview favorable to her case, plaintiff argues that "[t]here was no real evidence in this case because there is no documentation on file from the police interview for the accused, no police investigation, no complainant statement just hearsay, no accused statement, and no expert report." Response To Order To Show Cause (Doc. #11) at 1. Rather, she alleges, "[t]his case seemed that it was only based on me and not the welfare of my child." Id. Plaintiff concludes that "[t]his type of libel and or slander can jeopardize" her reputation. Id. In other words, plaintiff asserts that defendant's evidentiary findings and decision to terminate her parental rights themselves constitute defamation.

After claiming that defendant's decision in her parental case constitutes defamation, plaintiff ends her Response To Order To Show Cause (Doc. #11) by asserting, without further explanation, that defendant violated her right against unreasonable searches and seizures under the

Fourth Amendment to the United States Constitution. This claim does not appear in plaintiff's complaint. Even if it did, it would be insufficient to raise a federal claim. Plaintiff merely quotes the Fourth Amendment, and fails to offer a single fact supporting the claim that defendant violated those rights. Id. This is insufficient to establish federal question jurisdiction.

Plaintiff's complaint does not assert a cognizable claim that defendant violated any of her civil rights under federal law. Therefore, Section 1343 cannot confer jurisdiction. See Lewis v. Stevenson, 123 F. App'x. 885, 886 (10th Cir. 2005) (Section 1343 merely jurisdictional statute and does not create cause of action); McAlpine v. McAlpine, No. 10-0048-CVE, 2010 WL 348318, at *2 (N.D. Okla. Jan. 26, 2010) (absent underlying civil rights violation, Section 1343 does not confer jurisdiction). As a result, the complaint fails to allege facts that are sufficient to establish subject matter jurisdiction. Consequently, the Court must dismiss plaintiff's claims. See Scheideman, 895 F. Supp. at 280 (citing Basso, 495 F.2d at 909); Fed. R. Civ. P. 12(h)(3).

Even if plaintiff had properly stated a claim arising under federal law, the Court would lack subject matter jurisdiction over her claims under the Rooker-Feldman doctrine. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). The Rooker-Feldman doctrine expressly bars federal district courts from reviewing state court decisions because only the Supreme Court has jurisdiction to hear appeals from final state court judgments.[1] Bear v. Patton, 451 F.3d 639, 641 (10th Cir. 2006). The doctrine prevents a party that lost in state court from seeking "what in substance would be appellate review of the state judgment in a United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997,

---

[1] In her response to Judge James' show cause order, plaintiff did not address the Rooker-Feldman doctrine.

1005-06 (1994).[2]  Under this doctrine, the Court lacks jurisdiction to consider claims actually decided by a state court and claims that are "inextricably intertwined" with a prior state court judgment.  Kenman Eng'g v. City of Union, 314 F.3d 468, 473 (10th Cir. 2002).  To determine whether claims are inextricably intertwined, the Court considers whether the state court judgment caused, both actually and proximately, the injury for which plaintiff seeks redress.  Where plaintiff claims that but for the judgment in state court, she would not have suffered the injury for which she seeks redress in federal court, Rooker-Feldman bars the action.  See Ritter v. Ross, 992 F.2d 750, 754-55 (7th Cir. 1993), cited with approval in Kenman Eng'g, 314 F.3d at 477.

Here, plaintiff is seeking what in substance would be an appellate review of defendant court's decision in her parental rights case.  The Court therefore lacks subject matter jurisdiction under the Rooker-Feldman doctrine.  Both in her Complaint (Doc. #1) and her Response To Order To Show Cause (Doc. #11), plaintiff challenges the evidentiary findings which supported defendant's decision to terminate her parental rights.  Her allegations amount to a claim that these findings, along with defendant's decision, constitute defamation in themselves.  In other words, defendant's decision to terminate plaintiff's parental rights caused the harm to her reputation.  Plaintiff's claims, therefore, are inextricably intertwined with defendant's judgment, and Rooker-Feldman prevents the Court from hearing those claims.

## II. Abstention

Even if the Court had subject matter jurisdiction, the Younger abstention doctrine prevents this Court from exercising its jurisdiction over the claims in plaintiff's complaint.  See Younger,

---

[2] For Rooker-Feldman to apply, the state court proceedings must be concluded. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  Because plaintiff failed to address the doctrine in response to the show cause order, the Court assumes that plaintiff's parental rights case has concluded. However, even if the case is still ongoing, plaintiff's action will be barred under Younger abstention, as discussed below.

401 U.S. 37 (1971). Under Younger, a federal district court must abstain from hearing a case which interferes with certain state proceedings. Though the primary application of Younger involves state criminal proceedings, the doctrine has also been extended to ongoing state civil and administrative proceedings. See Amanatullah v. Colo. Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999). Younger dictates that a federal district court abstain from exercising jurisdiction over federal claims when (1) a state criminal, civil or administrative proceeding is pending, (2) the state court provides an adequate forum to hear the claims that plaintiff raised in the federal complaint and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. Id. Absent extraordinary circumstances, abstention is mandatory if these elements are satisfied. Id. "Extraordinary circumstances" include where the state proceeding is motivated by a desire to harass, is conducted in bad faith or will cause immediate irreparable injury. Perez v. Ledesma, 401 U.S. 82, 85 (1971); see Huffman v. Pursue, Ltd., 420 U.S. 592, 611 (1975).

In the show cause order, Judge James noted that Younger may prevent the Court from exercising jurisdiction over plaintiff's claims because it appears on the face of the complaint that a case involving plaintiff may be open in the Juvenile Department of the District Court of Wyandotte County, Kansas. Accordingly, Judge James instructed plaintiff to demonstrate why the Court should not abstain from hearing plaintiff's claims. In her response to the order to show cause, plaintiff did not address Younger, or even mention whether her parental rights case is still pending in state court. Rather, she again challenged the evidence supporting defendant's decision. Therefore, assuming the case is still pending in state court, Younger prevents the Court from considering plaintiff's claims.[3] In addition to the pending proceeding, the state court provides an

---

[3] If plaintiff's parental rights case has instead concluded, the Court still cannot hear

adequate forum to hear plaintiff's claims, including her evidentiary challenges, and the state proceedings involve important state interests.  See Morrow v. Winslow, 94 F.3d 1386, 1393, 1397 (10th Cir. 1996) (Younger abstention appropriate where case involves ongoing child custody dispute, because state has very significant interest in child custody concerns) (citing Moore v. Sims, 442 U.S. 415, 435 (1979)); see also Norris v. Johnson Cty. Prob. & Juvenile Court, No. 09-2598-JWL, 2010 WL 1141263, at *3 (D. Kan. Mar. 22, 2010) (Tenth Circuit consistently recognizes pending child custody proceedings involve important state interests).  Moreover, plaintiff has failed to establish extraordinary circumstances overcoming the mandatory abstention, such as harassment or bad faith.

Plaintiff has not shown that the Court has subject matter jurisdiction over her claims. Furthermore, even if the Court had subject matter jurisdiction, it would abstain from exercising jurisdiction in this case.  See Younger, 401 U.S. 37 (1971).

**IT IS THEREFORE ORDERED** that this action is **DISMISSED**.

Dated this 6th day of September, 2019 at Kansas City, Kansas.

            s/ Kathryn H. Vratil
            KATHRYN H. VRATIL
            United States District Judge

---

plaintiff's claims because it lacks subject matter jurisdiction under the Rooker-Feldman doctrine, as explained above.